**Virginia McAFEE**

v.

**Douglas R. WRIGHT.**

Supreme Judicial Court of Maine.

Argued Sept. 20, 1994.

Decided Dec. 21, 1994.

Shaun P. Lister (orally), Cullenberg Law Offices, Farmington, for plaintiff.

Richard Silver (orally), Russell, Lingley & Silver, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

Douglas R. Wright appeals from a judgment entered in the Superior Court (Franklin County, *Perkins, A.R.J.*) affirming a judgment entered in the District Court (Farmington, *Batherson, A.R.J.*) holding him liable to Virginia McAfee for emotional distress and for the interest and penalties assessed by the Internal Revenue Service and the State of Maine for failing to file W–2 forms. Because no evidence supports the finding that Wright was responsible for McAfee's failure to file those forms, and because damages for emotional distress are not available for the breach of a contract to provide accounting services, we modify the judgment to delete the damages improperly awarded.

James and Virginia McAfee bought a small convenience store in Farmington Falls in 1987. Shortly after they purchased the business, the McAfees hired Douglas Wright as their accountant. In 1988 the McAfees started receiving notices from the IRS that they were delinquent in filing and paying their taxes. They continued to receive such notices until 1990. The McAfees discharged

Wright in June of 1990. Thereafter, despite repeated requests, Wright refused to return their files until the McAfees commenced this action in July of 1991 alleging breach of contract and various types of damage including emotional distress. Wright counterclaimed for the unpaid value of his services. The District Court, *inter alia,* ruled that Wright was liable to McAfee for interest and penalties associated with the late filing of W–2 forms, for certain other IRS and State of Maine penalties not involved in this appeal, and for Virginia McAfee's emotional distress related to her tax difficulties.[1] On the counterclaim, also not involved in this appeal, the court awarded Wright the value of his services.

### The Failure to File

■ The District Court found that the McAfees' liability to the IRS and the State of Maine for failure to file W–2 forms arose from Wright's failure to furnish the forms to them. We will not set aside a finding of fact by a trial court unless it is "clearly erroneous." *Morin Bldg. Prod. Co. v. Atlantic Design & Constr. Co.,* 615 A.2d 239, 241 (Me.1992). We must affirm the decision of the trial court "if any credible evidence, and all justifiable inferences drawn from such evidence, viewed in the light most favorable to the plaintiff, support the [decision]." *Marquis v. Farm Family Mut. Ins. Co.,* 628 A.2d 644, 648 (Me.1993) (*quoting Redlon's, Inc. v. Gilman, Inc.,* 485 A.2d 661, 662 (Me. 1984)).

Virginia McAfee's testimony, though tentative at times, reveals that she did receive the W–2 forms for 1988. When first asked if she remembered receiving them from Wright, she stated that she could not answer that question because she had no idea. Nor did she know if her employees were given their copies of the forms in January of 1989. In subsequent testimony, however, McAfee stated with certainty that she had received the forms but that she remembered that they had come in late. A former employee of McAfee testified, however, that she had received her W–2 form for her 1988 wages in January of 1989.

Contrary to the finding of the District Court, we find that the evidence compels the conclusion that the McAfees received their W–2 forms from Wright if not in January of 1989, then shortly thereafter. It is important to distinguish between Wright's obligation to prepare and furnish the W–2 forms to the McAfees and the McAfees' responsibility to file copies with the IRS and the State of Maine. Once the McAfees received the W–2 forms from Wright it was their responsibility to file copies with the authorities. The court thus erred in holding Wright responsible for a tentative penalty[2] of $4,249 assessed against the McAfees in October 1991 for their continuing failure to file the forms.

### Damages for Emotional Distress

Wright argues that the $7,500 in damages awarded for emotional distress are not available under Maine law in contract actions.[3] McAfee recognizes that damages for emotional distress are generally not recoverable in contract cases. She asserts, however, that the facts of this case fit within an exception to the general rule.

■ The general rule is that damages for emotional distress as a result of a breach of contract are not recoverable. *See Rubin v. Matthews Int'l Corp.,* 503 A.2d 694, 696–98 (Me.1986). Some courts and the *Restatement (Second) of Contracts,* § 353 (1981),[4]

---

1. McAfee testified that she was unable to sleep at night, that her relationship with her husband suffered from her distress, and that because of worry she was unable to eat and, as a result, lost weight.

2. After 33 months the penalty was apparently still tentative: "[t]he applicable portion of the penalty will be abated for Forms W–2 that you submit." (Pl.Ex. 4).

3. Wright conceded liability for the interest and penalties assessed because of his late preparation of the McAfees' 1988 income tax returns.

4. The Restatement (Second) of Contracts § 353 states:
   Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.
   Restatement (Second) of Contracts § 353 (1981).

have recognized a few limited exceptions to this rule involving breaches of contracts between carriers and innkeepers and their passengers and guests; contracts for the carriage and proper disposition of dead bodies and; contracts for the delivery of messages concerning death. *Id.* at comment a. The common thread between these exceptions is that mental distress is a particularly likely result of a breach. This is clearest in the cases involving dead bodies and the delivery of messages concerning death. We find McAfee's contention that Wright's fiduciary relationship with her and her late husband is analogous to these exceptions to be unpersuasive. The policy which underlies the narrow scope of exceptions to the general rule is predicated on the fact that damages for emotional distress, even when foreseeable, are "particularly difficult to establish and to measure." *Id.* Holding that a fiduciary relationship, alone, is sufficient to qualify for an exception to the general rule would all but swallow the rule.

The entry is:

Judgment modified to delete damages for emotional distress of $7,500 and for the late filing of W–2 forms of $4,249 and, as so modified, affirmed.

All concurring.