STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
Docket No. BCD-CV-17-29 ✓

Sherman Leighton, et al )
)
Plaintiffs, )
)
v. )
)
)
)
)
)
Title Pro, LLC et al, )
)
Defendants, )

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

Presently before the court are the following motions for summary judgment: (1) Defendant TitlePro, LLC's motion for summary judgment on Count I; (2) Defendants Coughlin, Rainboth, Murphy & Lown, P.A. ("CRML"), Bradley M. Lown, Esq., U.S. Bank, N.A. ("U.S. Bank"), and Wells Fargo Bank, N.A.'s ("Wells Fargo") motion for summary judgment on Counts III, V, VI, XI, and XII; and (3) Defendants Chicago Title Insurance Company ("Chicago Title") and Fidelity National Title Insurance Group, Inc.'s ("Fidelity") motion for summary judgment on Counts II, IV, IX, and XVII.

## BACKGROUND

Plaintiffs Sherman and Barbara Leighton (the "Leightons") are husband and wife. (TitlePro Supp'g S.M.F. ¶ 1.) On September 29, 2004, they purchased a parcel of real property in Dexter, Maine. (Defs. Supp'g S.M.F. ¶ 1.) At the real estate closing on September 29, 2004,

Mr. Leighton signed a promissory note to lender Ardent Mortgage Co., LLC. (*Id.* ¶¶ 3-5.) Mr. Leighton also signed a mortgage granting Ardent Mortgage a security interest in the Dexter property. (*Id.* ¶ 6.) Mrs. Leighton did not sign the note or the mortgage. (*Id.* ¶ 7.)

The note, the mortgage, and a number of other closing documents, including the owner's title insurance policy and the lender's title insurance policy were prepared by Defendant TitlePro. (TitlePro Supp'g S.M.F. ¶ 4; CT&F Supp'g S.M.F. ¶ 3.) No employee or agent from TitlePro attended the closing. (TitlePro Supp'g S.M.F. ¶ 6.)

The Owner's insurance policy was underwritten by Defendant Chicago Title, a subsidiary of Defendant Fidelity. (CT&F Supp'g S.M.F. ¶ 8, 11.) The owner's insurance policy lists only Mr. Leighton as the owner of the Dexter property. (*Id.* ¶ 9.) The owner's insurance policy does not list Mrs. Leighton as an owner of the property. (*Id.* ¶ 10.)

A separate lender's title insurance policy, also underwritten by Chicago Title, was purchased for lender Argent Mortgage. (*Id.* ¶ 17.) No representative from Chicago Title or its parent company, Fidelity, attended the closing. (*Id.* ¶ 4.)

At the closing, Mr. Leighton requested that Mrs. Leighton's name be added to the property deed. (CT&F Supp'g S.M.F. ¶ 6; TitlePro Supp'g S.M.F. ¶ 24.) Accordingly, the property was deeded to the Leightons as joint tenants. Mrs. Leighton's name was not added to any of the closing documents. (TitlePro Supp'g S.M.F. ¶ 25.)

Defendant U.S. Bank is the successor-in-interest to Argent Mortgage and is the holder of the note and owner of the mortgage. (CT&F Supp'g S.M.F. ¶ 18.) Defendant Wells Fargo is the servicer of the loan for U.S. Bank. (Defs. S.M.F. ¶ 19.)

In 2007, Wells Fargo discovered the omission of Mrs. Leighton's name from the mortgage, which made the mortgage unenforceable as to her interest. (CT&F Supp'g S.M.F. ¶

2

20.) Wells Fargo made a claim to Chicago Title under the lender's title insurance policy, that Chicago Title agreed to cover. (*Id.* ¶ 21.) Chicago Title sent a letter to Mr. Leighton in May 2007 asking that the Leightons correct the error by agreeing to add Mrs. Leighton's name to the mortgage. (*Id.* ¶ 22.) The Leightons refused to sign a confirmatory mortgage. (*Id.* ¶ 23.) U.S. Bank renewed its claim with Chicago Title in March 2013. (*Id.* ¶ 27.) Chicago Title hired Defendants CRML and Attorney Lown to represent U.S. Bank in resolving the mortgage issue. (*Id.*) In April 2013, CRML sent a demand letter to Mrs. Leighton seeking to resolve the issue. (Defs. Supp'g S.M.F. ¶ 21.)

On June 11, 2013, Attorney Lown, on behalf of its client U.S. Bank, filed an action in Penobscot County Superior Court seeking an equitable reformation of the mortgage and an equitable lien. (*Id.* ¶ 23.) On April 21, 2014, the court (Cuddy, J.) granted summary judgment in favor of the Leightons on both claims. A motion for reconsideration was denied on December 5, 2014.

The Leightons initiated this action on May 9, 2016, by filing an eighteen-count complaint in the Penobscot County Superior Court against TitlePro, Chicago Title, Fidelity, Wells Fargo, U.S. Bank, CRML, and Attorney Lown, asserting multiple claims of breach of contract, wrongful use of civil proceedings, and intentional and negligent infliction of emotional distress. On February 28, 2017, the Superior Court (Mallonee, J.) issued an order dismissing Counts VII, VIII, X, XIII, XIV, XV, XVI, and XVIII, and partially dismissing Count II with respect to Fidelity. This Case was transferred to the Business and Consumer Docket on July 7, 2017. All of the defendants have now moved for summary judgment on the remaining ten counts.[1] While

---

[1] In their oppositions, the Leightons assert, in passing, that the defendants' motions for summary judgment are premature because discovery is ongoing and does not close until December 2017. (Pls. Opp'n TitlePro Motion Summ. J. 2; Pls. Opp'n Defs. Mot. Summ. J. 5.) However, the

3

Plaintiffs did file oppositions to the first two motions listed above, no supporting statements of material facts were included. No opposition at all has been filed to the third motion. By Order dated August 2, 2017, the Court denied Plaintiffs' Motion to Late File Statement of Material Facts.

## STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A fact is material if it can affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue of material fact exists if the fact finder must choose between competing versions of the truth. *Id.* When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden shifts to the non-moving party to respond with specific facts establishing a prima facie case for each element of the claim challenged by the moving party. M.R. Civ. P. 56(e); *Chartier v. Farm Family Life Ins. Co.*, 2015 ME 29, ¶ 6, 113 A.3d 234. If the non-moving party fails to present sufficient evidence of the challenged elements, then the moving is entitled to a summary judgment. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897.

## ANALYSIS

### I. TitlePro, LLC's Motion for Summary Judgment on Count I

In Count I of their complaint, the Leightons allege that TitlePro entered into a contract

---

Leightons have not submitted an affidavit pursuant to Maine Rule of Civil Procedure 56(f), stating why they cannot present fact in support of their opposition or a why further discovery is warranted.

with the Leightons to provide a title insurance policy insuring their respective ownership interests. (Compl. ¶ 79.) The Leightons contend that TitlePro breached that agreement by failing to provide owner's insurance coverage for Barbara Leighton, issuing a policy that omitted Barbara Leighton, and refusing their demand to issue a policy insuring Barbara Leighton's interest. (*Id.* ¶¶ 81-84.) The Leightons seeks an order compelling TitlePro to issue a policy insuring Barbara Leighton's interest and damages.

TitlePro contends there was no meeting of the minds to provide owner's title insurance coverage to Mrs. Leighton or to later add Mrs. Leighton to the policy. (TitlePro. Mot. Summ. J. 5-6.) TitlePro further contends, even it was required to provide a title insurance coverage to Mrs. Leighton, there is no evidence of damages caused by failure to provide such insurance. (*Id.* at 6.) Title Pro contends the insurance company would not have covered the cost of the prior action because Mr. Leighton never submitted a notice of claim to the insurance company and the policy contained an exclusion for losses that arise by reason of his mortgage. (*Id.*) Furthermore, at his deposition, Mr. Leighton was unable identify any harm caused by TitlePro failure to provide a policy insuring Mrs. Leighton's interest. (*Id.*)

In their opposition to TtitlePro's motion, the Leightons raise several legal arguments, which they assert preclude summary judgment. (Pls. Opp'n Mot. Summ. J. 5-9.) However, the Leightons failed submit an opposing or additional statement of material facts in support of their opposition. Maine Rule Civil Procedure 56(h)(2) expressly states:

> **A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise opposing statement.** The opposing statement shall admit, deny or qualify the facts asserted by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. ... In addition to any denials or qualifications, the party opposing summary judgment may note any objections to factual assertions made by the moving party as set forth in paragraph (i). The opposing statement may

5

contain in a separately titled section any additional facts which the party opposing summary judgment contends raise a disputed issue for trial, set forth in separate numbered paragraphs and supported by a record citation as required by paragraph (4) of this rule.

M.R. Civ. P. 56(h)(2) (emphasis supplied). Rule 56(h)(4) further provides:

> **Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.** An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. **The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.** The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

M.R. Civ. P. 56(h)(4) (emphasis supplied). Because the Leightons have failed to properly controvert TitlePro's supporting statement of material facts, all properly supported statements of material fact shall be deemed admitted.

To sustain a claim for breach of contract, the plaintiff must establish: (1) the parties had a legally binding contract; (2) the defendant breached a material term of the contract; and (3) defendant's breach caused the plaintiff to suffer damages. *Tobin v. Barter*, 2014 ME 51, ¶¶ 9-10, 89 A.3d 1088. To demonstrate the existence of a legally binding contract, the plaintiff must establish that there was a "meeting of the minds" between the parties, meaning a "mutual assent to be bound by all the material terms of the contract." *Id.* ¶ 9 (internal citation and alterations omitted).

In support of its motion, TitlePro set forth the following statements of material fact, which are properly supported by record citation. *See* M.R. Civ. P. 56(h)(1). Mr. Leighton's title insurance policy lists only his name as the insured. (TitlePro Supp'g S.M.F. ¶ 11, S. Leighton Dep. Ex. 3.) Mr. Leighton's title insurance policy lists no one else as an insured. (*Id.* ¶ 12.) At his deposition, Mr. Leighton stated that he never saw a title insurance document that included

6

Mrs. Leighton's name. (*Id.* ¶ 14.) Mr. Leighton conceded at deposition that he never brought to anyone's attention the fact that the title insurance policy only listed his name and never told anyone that the policy should include Mrs. Leighton as an insured. (*Id.* ¶¶ 15-17.) At the closing, Mr. Leighton asked if it would be possible to put his wife's name on the deed. (*Id.* ¶ 24.) There was no discussion about putting Mrs. Leighton's name on the title insurance policy. (*Id.* ¶ 25.) Mr. Leighton did not recall Mrs. Leighton saying anything at the closing about putting her name on the title insurance policy. (*Id.* ¶ 26.) Mr. Leighton never communicated with TitlePro about who should be listed as an insured on the title insurance policy until after the policy was issued. (*Id.* ¶ 28.) Mr. Leighton concedes had no agreement with TitlePro at the time of the closing to put his wife's name on the title insurance policy. (*Id.* ¶ 30.) Mrs. Leighton testified at deposition that, at the time of closing, she did not think she should have been listed on the title insurance policy. (*Id.* ¶ 33.) Until Mrs. Leighton went to a lawyer after getting a letter offering her $500.00 to put her name on the mortgage, Mrs. Leighton never asked to be listed on the title insurance policy. (*Id.* ¶ 34.) After Mr. Leighton retained a lawyer, a request was made to add Mrs. Leighton to the title insurance policy several years after Mr. Leighton had purchased the property. (*Id.* ¶ 29.)

Based on foregoing uncontroverted statements of material fact, there is no genuine dispute that there was no meeting of the minds to provide owner's title insurance coverage to Mrs. Leighton or to later add Mrs. Leighton to the policy. Based on the uncontroverted facts, there was clearly never an agreement to list Mrs. Leighton as an insured at the time of closing. Even though a request was later made to add Mrs. Leighton to the policy, there is no evidence that TitlePro ever assented to that request. It is uncontroverted that Mr. Leighton is the only insured listed on the title insurance policy. Therefore, there is no genuine issue that the parties

did not have a legally binding agreement to provide owner's title insurance coverage to Mrs. Leighton at any time. Accordingly, Defendant TitlePro is entitled to summary judgment on the Leighton's claim for breach of contract. The court need not address TitlePro's argument regarding damages.[2]

## II. Defendants CRML, Lown, U.S. Bank, and Wells Fargo's Motion for Summary Judgment on Counts III, V, VI, XI, and XII

Defendants CRML, Lown, U.S. Bank, and Wells Fargo[3] seek summary judgment on the Leightons' claims against them for wrongful use of civil proceedings (Counts III, V, and VI). (Defs. Mot. Summ. J. 3-14.) Wells Fargo also seeks summary judgment on the Leightons' claims against it for intentional and negligent infliction of emotional distress (Counts XI and XII). (*Id.*)

### A. Wrongful Use of Civil Proceedings

---

[2] Moreover, the legal arguments raised in Leighton's opposition have no merit. First, the Leightons erroneously contend that TitlePro seeks to relitigate its previously denied motion to dismiss based on the statute of limitations. (Pls. Opp'n Mot. Summ. J. 2, 5.) TitlePro's present motion clearly raises new arguments and does not address the statute of limitations. (Def. Mot. Summ. J. 5-6.) Second, the Leightons also cite case law regarding an insurer's duty to defend. (Pls. Opp'n Mot. Summ. J. 5-8.) This argument is irrelevant to pending motion. The issue raised in the Leightons' claim for breach of contract and TitlePro's motion is whether the Leightons' and TitlePro had an binding agreement under which TitlePro was obligated to provide title insurance coverage to Mrs. Leighton. The insurer's duty to defend is not implicated by either the Leighton's breach of contract claim or TitlePro's motion. Lastly, the Leightons assert that they have suffered damages in the form of legal fees incurred in defending the prior reformation action and that Mrs. Leighton suffered emotional distress damages. (*Id.* at 9.) Foremost, the Leightons have not put forth any statements of fact supported by record evidence to support their damages assertions. Therefore, the Leightons' unsupported factual assertions in their motion may be disregarded. *See* M.R. Civ. P. 56(h)(4). Moreover, as a general rule, damages for emotional distress are not recoverable on a breach of contract claim, except in limited circumstances. *McAfee v. Wright*, 651 A.2d 371, 372 (Me. 1994). None of the recognized exceptions are implicated in this case. *See id.* Thus, even if the Leightons had properly supported their factual assertions, Mrs. Leighton would still not be entitled to emotional stress damages against TitlePro.

[3] For the purposes of this section, CRML, Lown, U.S. Bank, and Wells Fargo are collectively referred to as "Defendants."

In their complaint, the Leightons aver that U.S. Bank, CRML, and Lown engaged in wrongful use of civil proceedings by bringing the prior action for reformation of the mortgage and an equitable lien. (Compl. ¶¶ 91-112, 120-30.) To sustain a claim for wrongful use of civil proceedings, a plaintiff must produce evidence of the following:

> (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought.

*Pepperell Tr. Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 17, 708 A.2d 651 (citing Restatement (Second) of Torts § 674 (1979)). A party has probable cause to initiate, continue, or procure civil proceedings if the party:

> ... reasonably believes in the existence of the facts upon which the claim is based, and either
> (a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or
> (b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information.

Restatement (Second) of Torts § 675. With respect to the final element, "[a] successful statute of limitations defense does not reflect on the merits of an action." *Palmer Dev. Corp. v. Gordon*, 1999 ME 22, ¶ 11, 723 A.2d 881. Thus, "termination of a lawsuit on statute of limitations grounds is not a favorable termination that will support an action for wrongful use of civil proceedings." *Id.* ¶ 12. What constitutes termination of a proceeding is a question of law. *Pepperell Tr. Co.*, 1998 ME 46, ¶ 18, 708 A.2d 651.

With regard to an attorney's liability, the Restatement (Second) of Torts § 674, comment d states that an attorney who initiates a civil proceeding or who takes any steps in the proceeding on behalf of a client is not liable for wrongful use of civil proceedings if: (1) the attorney has probable cause for his or her actions; or (2) even if the attorney has no probable cause and is

9

convinced the client's claim is unfounded, he or she acts primarily for the purpose of aiding the client in obtaining a proper adjudication of the claim. Restatement (Second) of Torts § 674, cmt. d. An attorney is not required or expected to prejudge a client's claim. *Id.* It is an attorney's responsibility to present their client's claim to the court for adjudication if the client so insists after the attorney has explained to the client the nature of the chances. *Id.*

Defendants assert that the Leightons' claims for wrongful use of civil proceedings fail because the prior action was terminated on statute of limitations grounds. (Defs. Mot. Summ. J. 10-11.) Defendants also assert the prior action was brought in good faith and for a proper purpose. (*Id.* at 11-12.) In their opposition, the Leightons assert that the prior action was not terminated based solely on the statute of limitations, but was also decided on the merits in favor of the Leightons. (Pls. Opp'n to Mot. Summ. J. 13-14.) The Leightons also assert Defendants lacked a reasonable belief that their claim could be proven. (*Id.* at 16.)

The Leightons have failed to submit opposing or additional statements of material fact in support of their opposition. As discussed above, a party opposing a summary judgment is required to submit opposing statements of material fact admitting, denying, qualifying, or objecting to the facts asserted in the moving party. M.R. Civ. P. 56(h)(2). Denials or qualification must be supported by record evidence. *Id.* The party opposing summary judgment may also submit statements of additional facts that the opposing party contends raise a disputed issue for trial. *Id.* Facts contained in the moving party's supporting statement of material facts, supported by record citations, shall be deemed admitted unless properly controverted. M.R. Civ. P. 56(h)(4). Because the Leightons have failed to properly controvert Defendants' supporting statement of material facts, all properly supported statements of fact shall be deemed admitted.

First, regarding final element, the Leightons' are correct that the prior action was not terminated based solely on the statute of limitations. In its order granting summary judgment for the Leightons, the court (Cuddy, J.) found that the six-year statute of limitations, 14 M.R.S. § 752, barred U.S. Bank's claims as to Mrs. Leighton, but that the twenty-year statute of limitations, 14 M.R.S. § 751, applied to U.S. Bank's claims as to Mr. Leighton. *U.S. Bank Nat'l Assocs. v. Leighton*, No. BANSC-RE-2013-97, at 5-6 (Me. Super. Ct., Pen. Cty., Apr. 21, 2014). The court also found that U.S. Bank had failed to demonstrate its *prima facie* case because "it made no showing of how or why Barbara Leighton, as joint tenant, was 'required' to sign the mortgage." *Id.* at 5. The court further stated, "Accepting the undisputed facts and applying the law to those facts, this Court is satisfied that [the Leighton's] motion for summary judgment should be GRANTED." *Id.* at 6. Thus, the court plainly granted summary judgment in favor of the Leightons based on both the statute of limitations and the merits.

On reconsideration, the court (Anderson, J.) found that the twenty-year statute of limitations, 14 M.R.S. § 751, did not apply and that U.S. Bank's claims against Mr. and Mrs. Leighton were both barred by the six-year statute of limitations. *U.S. Bank Nat'l Assocs. v. Leighton*, No. BANSC-RE-2013-97, at 3-5 (Me. Super. Ct., Pen. Cty., Dec. 5, 2014). In denying U.S. Bank's motion for reconsideration, the court expressly stated:

> After reviewing the file, the court denies [U.S. Bank's] motion for reconsideration. Although the court previously provided reasoning for granting the motion for summary judgment, the court now provides **additional reasoning** the supports the granting of summary and denial of [U.S. Bank's] motion...

*Id.* at 3 (emphasis supplied). Thus, on reconsideration, the court did not overrule the prior decision on summary judgment. The court plainly stated that its ruling on the statute of limitations was in addition to the court's prior reasoning for granting summary judgment in favor of the Leightons. There is no dispute the prior action was terminated based both on the statute of

11

limitations and its merits. Therefore, the court finds that the prior action was sufficiently terminated in favor Leightons for the purposes of wrongful use of the civil proceedings.

However, based on Defendants' uncontroverted statements of material fact and supporting evidence, U.S. Bank and its counsel, CRML and Lown, had both probable cause and a proper purpose for bringing the prior action. Defendants assert the following uncontroverted facts. The promissory note and mortgage were signed only by Mr. Leighton. (Defs. Supp'g S.M.F. ¶¶ 5-6.) Only Mr. Leighton was named as an insured on the owner's title insurance policy. (*Id.* ¶¶ 10, 12.) Pursuant to the written closing instructions, the vesting name, Sherman Leighton, was required to match the applicable transfer deed. (*Id.* ¶ 35.) Though Mrs. Leighton did not sign the note or the mortgage, Mrs. Leighton was included on the warranty deed and acquired title in the property as a joint tenant. (*Id.* ¶ 7.) Attorneys for Wells Fargo, acting the servicers for U.S. Bank, submitted a claim under their lender's title insurance policy. (*Id.* ¶ 18.) The letter stated it was in the client's best interest that title to the property be made clear and marketable and requested the insurer work to clear title. (Defs. Ex. 8.) In their complaint for mortgage reformation or equitable lien, U.S. Bank alleged:

> 6.     Although the Respondent Barbara Leighton is a joint tenant on the subject property, she did not sign the mortgage, and the Petitioner believes this was unintended and inadvertent, as no lender would loan funds to only one of two married joint tenants who occupy the subject property as their home.

(Defs. Supp'g S.M.F. ¶ 27; Defs. Ex. 1 ¶ 6.) U.S. Bank further alleged:

> 13.     It would be manifestly inequitable and unjust for the Respondent Barbara Leighton to avoid the consequences of foreclosure after benefiting from the proceeds of the Petitioner's loan and the occupancy of the property purchased with the loan proceeds simply because she neglected to execute the mortgage in question.

12

(*Id.* ¶ 28; Defs. Ex. 1 ¶ 13.)[4]

Based on the foregoing uncontroverted facts and record evidence, there is no genuine dispute that U.S. Bank and its counsel, CRML and Lown, had both probable cause and a proper purpose for bringing the prior action against the Leightons. Therefore, U.S. Bank, CRML, and Lown are entitled to summary judgment on Counts III and V for wrongful use of civil proceedings.[5]

Furthermore, there is also no basis for finding Wells Fargo liable for wrongful use of civil proceedings. As discussed above, only a party who "initiates, continues, or procures civil proceedings without probable cause" is liable for wrongful use of civil proceedings. *Pepperell Tr. Co.*, 1998 ME 46, ¶ 17, 708 A.2d 651. Wells Fargo was not a party to the prior action.

---

[4] Generally, citations to a complaint are not proper record evidence to support statements of material fact. *See* M.R. Civ. P. 56(e), (h)(4); *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶¶ 8-9, 770 A.2d 653. Here, however, Defendants are not citing to the complaint from the prior action to support for the truth of allegation contained in the complaint. Rather, Defendants cite to the allegations in their prior complaint as evidence what was previously pleaded, which demonstrates both their cause and purpose for bringing the prior action.

[5] In their complaint, the Leightons also assert that U.S. Bank committed wrongful use of civil proceedings by filing an affidavit of Jimmy Siros containing false, misleading, and improper assertions of fact and a meritless motion to post bond or make escrow payments in the underlying action. (Compl. ¶¶ 99-112.) The Leightons also assert that CRML and Lown engaged wrongful use of civil proceedings when Lown filed his own affidavit in the prior action containing improper and unsupported assertions of fact. (*Id.* ¶ 129); (*see also* Pls. Opp'n Mot. Summ. J. 9-11.) Neither of these assertions constitutes a basis for wrongful use of civil proceedings. As discussed above, only a party who "initiates, continues, or procures civil proceedings without probable cause" is liable for wrongful use of civil proceedings. *Pepperell Tr. Co.*, 1998 ME 46, ¶ 17, 708 A.2d 651. Improper litigation tactics are not a basis of liability for wrongful use of civil proceedings. *See Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶¶ 6-7, 708 A.2d 283 (distinguishing wrongful use of civil proceedings from abuse of process.) The Leightons have not bought any claims for abuse of process. Moreover, the Maine Rules of Civil Procedure provide other ways to remedy and sanction improper conduction other than retaliatory suits. Improper affidavits filed in support of summary judgment may be dealt with pursuant to Rule 56(g). Likewise, improper motions may be remedied pursuant to Rule 11. *See Palmer Dev. Corp.*, 1999 ME 22, ¶ 12, 723 A.2d 881 (stating there are ways other than retaliatory suits for wrongful use of civil proceedings to sanction attorney behavior).

13

(Defs. Ex. 1.) Wells Fargo was the loan servicer for U.S Bank. (Defs. Supp'g S.M.F. ¶ 19.) Wells Fargo contends it did not make any demands or give instructions regarding the prior action against the Leightons. (*Id.*; Ex. 16, Martin Aff. ¶ 6.) Although attorneys for Wells Fargo did file a title claim with the lender's title insurer, Wells Fargo asserts it had no role in hiring CRML and Lown or the manner in which the prior action proceeded. (*Id.*; Ex. 16, Martin Aff. ¶ 7.) Thus, Wells Fargo did not initiate, continue, or procure the prior action against the Leightons. Therefore, Wells Fargo is entitled to summary judgment on Count VI for wrongful use of civil process.[6]

Therefore, based on the foregoing, Defendants CRML, Lown, U.S. Bank, and Wells Fargo are entitled to summary judgment on Counts III, V, and VI of the Leightons' complaint for wrongful use of civil process.

B.     Intentional and Negligent and Intentional Infliction of Emotional Distress

Wells Fargo also seeks summary on the Leightons' claims for intentional and negligent infliction of emotional distress (Counts XI and XII). Wells Fargo asserts there is no evidence of extreme and outrageous conduct on its part that can support a claim for intentional infliction of emotional distress. (Defs. Mot. Summ. J. 16-17.) Wells Fargo further asserts that it owed no duty to Leightons to avoid emotional harm, and therefore, cannot be liable for negligent infliction of emotional distress. (*Id.* at 18.) In their opposition, the Leightons assert that the tort

---

[6] In their complaint, the Leightons assert Wells Fargo is liable for wrongful use of civil proceedings based on the affidavit of Jimmy Siros, Wells Fargo's Vice President of Loan Documentation, which was filed by U.S. Bank in support of its opposition to summary judgment in the prior action. (Compl. ¶¶ 131-39); (*see also* Pls. Opp'n Mot. Summ. J. 17.) The Leightons aver that Siros's affidavit contained misleading and improper assertions of fact. (Compl. ¶¶ 131-39.) As discussed above, only a party who "initiates, continues, or procures civil proceedings without probable cause" is liable for wrongful use of civil proceedings. *Pepperell Tr. Co.*, 1998 ME 46, ¶ 17, 708 A.2d 651. Improper affidavits are not a basis for liability for wrongful use of civil proceedings. *See Campbell*, 1998 ME 70, ¶¶ 6-7, 708 A.2d 283.

14

of wrongful use of civil proceedings can support its claim for negligent infliction of emotional distress. (Pls. Opp'n Mot. Summ. J. 17.) The Leightons make no specific arguments regarding their intentional infliction of emotional distress, only that Wells Fargo was the "caller of shots" as servicer for U.S. Bank and was responsible for the Siros Affidavit that contained misleading and improper assertions of fact. (*Id.*) The Leightons have failed to submit any statements of material fact to support their assertions.

To sustain a claim for intentional infliction of emotional distress the plaintiff must produce evidence of the following: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that severe emotional distress would result; (2) the defendant's conduct was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;" (3) the defendant's conduct caused the plaintiff's severe emotional distress; and (4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Bratton v. McDonough*, 2014 ME 64, ¶ 22, 91 A.3d 1050 (citation omitted). "[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Lougee Conservancy*, 2012 ME 103, ¶ 26, 48 A.3d 774.

As discussed above, Wells Fargo was not a party to the prior action. (Defs. Ex. 1.) Wells Fargo was the loan servicer for U.S Bank. (Defs. Supp'g S.M.F. ¶ 19.) Wells Fargo avers it did not make any demands or give instructions regarding the prior action against the Leightons. (*Id.*; Ex. 16, Martin Aff. ¶ 6.) Although attorneys for Wells Fargo did file a title claim with the lender's title insurer, Wells Fargo asserts it had no role in hiring CRML and Lown or the manner in which the prior action proceeded. (*Id.*; Ex. 16, Martin Aff. ¶ 7.)

15

Based on these uncontroverted facts, there is no evidence that Wells Fargo acted with the requisite intent to cause emotional harm or recklessness, nor was emotional harm substantially certain to occur. Moreover, the court does not find Wells Fargo's conduct to be so extreme and outrageous to warrant recover.[7]

To sustain a claim for negligent infliction of emotional distress, the plaintiff must establish the same elements required for most negligence torts: (1) defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused harm to the plaintiff. *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18. However, there is no general duty to avoid negligently causing emotional harm to others. *Id.* Our Law Court has recognized a duty to reasonably avoid emotional harm to others in three limited circumstances: (1) bystander liability actions; (2) circumstances where a special relationship exists; and (3) where the defendant has committed another tort. *Id.* ¶ 19.

As previously discussed, Wells Fargo was the loan servicer for U.S Bank. (Defs. Supp'g S.M.F. ¶ 19.) Thus, there is no special relationship between Wells Fargo and the Leightons that warrants liability for negligent infliction of emotional distress. Moreover, there is no independent tort to support liability. The only other tort asserted against Wells Fargo is wrongful use of civil proceedings. Because the Leightons' claim for wrongful use of civil proceedings against Wells Fargo fails for the reasons discussed above, the Leightons' negligent infliction of

---

[7] In their opposition, the Leightons contend that Wells Fargo's attorneys sent a demand letter requesting that Barbara sign the mortgage in exchange for $500.00 prior to the initiation of previous action. (Pls. Opp'n Mot. Summ. J. 6.) The Leightons also assert that Wells Fargo is liable for the affidavit of Jimmy Siros, Wells Fargo's Vice President of Loan Documentation, filed in the prior action by U.S. Bank. (Pls. Opp'n Mot. Summ. J. 17.) Neither assertion is supported by statement of material facts. Even if these assertions were properly set forth in a statement of material fact, neither action is so extreme and outrageous to warrant liability for intentional infliction of emotional distress.

emotional distress must also fail. Thus, Wells Fargo is entitled to summary judgment on the Leightons' claims for intentional and negligent infliction of emotional distress.

Therefore, based on the foregoing, Defendants CRML, Lown, U.S. Bank, and Wells Fargo are entitled summary judgment on Counts III, V, and VI for wrongful use of civil proceedings. Wells Fargo is also entitled to summary judgment on Counts XI and XII for intentional and negligent infliction of emotional distress.

### III. Defendants Chicago Title and Fidelity's Motion for Summary Judgment on Counts II, IV, IX, and XVII

Chicago Title and its parent company Fidelity seek summary judgment in their favor on the Leightons claims for breach of contract against Chicago Title (Count II), their claim wrongful use of civil proceedings against both Chicago Title and Fidelity (Count IV), and their claims for intentional infliction of emotional distress against both Chicago Title and Fidelity (Counts IX and XVII). Chicago Title and Fidelity filed their motion for summary judgment on July 7, 2017. The Leightons' opposition was due on July 28, 2017. No opposition was filed. Because the Leightons have failed to properly controvert Chicago Title and Fidelity's supporting statement of material facts, all properly supported statements of fact shall be deemed admitted.

Chicago Title and Fidelity contend that the Leightons have brought three distinct claims against them. (CT&F Mot. Summ. J. 1.) First, the Leightons contend that Chicago Title breached the owner's title insurance policy issued to Mr. Leighton by Chicago Title. (*Id.*) Second, the Leightons contend that Chicago Title and Fidelity engaged in wrongful use of civil proceedings by hiring CRML and Lown to represent U.S. Bank in the prior action under the lender's title insurance policy issued by Chicago Title. (*Id.* at 1-2.) Third, the Leightons contend that Chicago Title and Fidelity engaged in intentional infliction of emotional distress by hiring CRML and Lown to represent U.S. Bank in the prior action. (*Id.*)

17

A.     Fidelity

First, Fidelity contends it is entitled to summary judgment all claims against it because it is a separate entity and had no role in the conduct alleged in the Leightons' complaint. (CT&F Mot. Summ. J. 8.)  In support of its motion, Fidelity set forth the following statements of material fact, which are properly supported by record citation. *See* M.R. Civ. P. 56(h)(1). Fidelity is the parent company of Chicago Title. (CT&F Supp'g S.M.F. ¶ 11.)  Fidelity was not a party to any of the closing documents and was not a party to the owner's title insurance policy. (*Id.*)  Fidelity had no contact with the Leightons. (*Id.* ¶ 38.) Plaintiffs have failed to evidence any facts supporting their claims against Fidelity, including wrongful use of civil proceedings and intentional infliction of emotional distress, Accordingly, Fidelity is entitled to summary judgment on all accounts in which it is named.

B.     Breach of Contract against Chicago Title

Chicago Title asserts that the Leightons' breach of contract claim is based solely on Chicago title's failure to ensure Mrs. Leighton under the owner's title insurance policy. (CT&F Supp'g S.M.F. ¶ 48.)  As discussed above, to sustain a claim for breach of contract, the plaintiff must establish: (1) the parties had a legally binding contract; (2) the defendant breached a material term of the contract; and (3) defendant's breach caused the plaintiff to suffer damages. *Tobin*, 2014 ME 51, ¶¶ 9-10, 89 A.3d 1088.  The court interprets a written contract in accordance with its plain and unambiguous terms. *Villas by the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457.

Chicago Title contends that the Leightons cannot demonstrate any breach of owner's title insurance policy by failing to include Mrs. Leighton under owner's title insurance policy. (CT&F Mot. Summ. J. 9.)  In support of its motion, Chicago Title set forth the following

18

statements of material fact, which are properly supported by record citation. *See* M.R. Civ. P. 56(h)(1). Under the plain language of the owner's title insurance policy, only Mr. Leighton was designated as an insured. (CT&F Supp'g S.M.F. ¶¶ 8-10; CT&F Ex. D.) Mr. Leighton never requested that Mrs. Leighton be added to the owner's title insurance policy. (*Id.* ¶ 12.) Mr. Leighton never made a claim to Chicago for coverage under the policy. (*Id.* ¶¶ 13, 32.) Mr. Leighton's only communication to Chicago Title was a request to modify the owner's title insurance policy to include Mrs. Leighton in September 2013 after the prior action had already been filed. (*Id.* ¶ 32.) Based on the foregoing uncontroverted facts and record evidence, as contended by Chicago Title, its failure to modify the owner's title insurance policy is not a breach of its terms. (CT&F Mot. Summ. J. 9.)

Chicago Title also asserts, even if it did breach the terms of the owner's policy by not including Mrs. Leighton as an insured, there is no evidence that such a breach proximately cause any damages to the Leightons. (*Id.* at 9-10.) The Court agrees. The terms of Mr. Leighton's owner's title insurance policy excludes claims related to the mortgage from coverage. (CT&F Supp'g S.M.F. ¶ 16; CT&F Ex. D.) Thus, Chicago Title would have denied coverage to both Mr. and Mrs. Leighton for the prior action. Moreover, there is no provision in Mr. Leighton's owner's policy that prohibits Chicago Title from providing coverage to U.S. Bank under its lender's policy issued by Chicago Title. (*Id.* ¶ 36; CT&F Ex. D.) Therefore, any damages incurred through Sherman Leighton's defense of the 2013 mortgage reformation action would have been suffered regardless of whether Barbara Leighton was a named insured. Thus, Plaintiffs have not demonstrated breach of a material term or causation of damages.

C.    Wrongful Use of Civil Proceedings

19

As discussed above, to sustain a claim for wrongful use of civil proceedings, a plaintiff must demonstrate that defendant: (1) initiated, continued, or procured civil proceedings without probable cause, (2) with a primary purpose other than securing the proper adjudication of a claim upon which the proceedings were based, and (3) the proceedings were terminated in favor of the person against whom they are brought. *Pepperell Tr. Co.*, 1998 ME 46, ¶ 17, 708 A.2d 651. Unlike the Defendants above, Chicago Title does not dispute that the prior action was terminated in the Leightons' favor. (CT&F Mot. Summ. J. 11 n.1.)

Chicago Title contends it had probable cause to retain CRML and Lown to bring the prior action to reform the mortgage for the following reasons: In the closing documents, Mr. Leighton agreed to "fully cooperate and adjust for clerical errors" on any closing document; No representative for Chicago Title or Fidelity was present at the closing; only Mr. Leighton signed the mortgage and the note, but Mrs. Leightons name was added to the property deed. (CT&F Supp'g S.M.F. ¶¶ 4-7.)

Chicago also contends it had a proper purpose for hiring CRML and Lown to bring the prior action on behalf of U.S. Bank. In support of that contention, Chicago Title set forth the following statements of material fact, which are properly supported by record citation. *See* M.R. Civ. P. 56(h)(1). A separate lender's title insurance policy was issued by Chicago to the original lender; the lender's title insurance also insurer U.S. Bank as successor-in-interest to the original lender; the lender's policy covers claims related to the mortgage; Wells Fargo, acting as servicer for U.S. Bank, field a claim based on what it perceived as an error in the mortgage, i.e. the omission of Mrs. Leighton's name from the mortgage, which made the mortgage unenforceable as to her interest in the property; Chicago title afforded coverage to U.S. Bank under the lender's title policy because it identified the omission as a clerical error; Mr. Leighton conceded at

20

deposition that he does not believe that Chicago Title or Fidelity "pressured" any party to bring the prior action. (CT&F Supp'g S.M.F. ¶¶ 17-21.) Based on the uncontroverted facts and record evidence, Chicago Title had both probable cause and a proper purpose for hiring CRML and Lown to represent U.S. Bank in the prior action and is not liable for wrongful use of civil proceedings.

D.     Intentional Infliction of Emotional Distress

As discussed above, to sustain a claim for intentional infliction of emotional distress the plaintiff must produce evidence of the following: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that severe emotional distress would result; (2) the defendant's conduct was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;" (3) the defendant's conduct caused the plaintiff's severe emotional distress; and (4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Bratton v. McDonough*, 2014 ME 64, ¶ 22, 91 A.3d 1050 (citation omitted). "[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Lougee Conservancy*, 2012 ME 103, ¶ 26, 48 A.3d 774. Regarding the last element, general feelings of being upset as not substantial enough to qualify as emotional distress.) *Id.*

Chicago Title and Fidelity contend they are entitled to summary judgment because the Leightons cannot identify any extreme and outrageous conduct. (CT&F Mot. Summ. J. 13.) In support of that contention, Chicago Title set forth the following statements of material fact, which are properly supported by record citation. *See* M.R. Civ. P. 56(h)(1). Chicago Title afforded coverage to U.S. Bank under the lender's title insurance policy; Chicago Title sent a

21

letter to Mr. Leighton asking the Leightons to correct the error on the mortgage; Chicago Title retained CRML and Lown to represent U.S. Bank. (CT&F Supp'g S.M.F. ¶¶ 21-22, 27.) Mr. Leighton testified at his deposition that he does not believe that Chicago Title or Fidelity pressured any party to bring the prior action against him and Mrs. Leighton. (*Id.* ¶ 29.)

Chicago Title and Fidelity also contend they are entitled to summary judgment because the Leightons cannot demonstrate they suffered emotional distress beyond the bounds of what a reasonable person could endure. (CT&F Mot. Summ. J. 13.) Chicago Title set forth the following statements of material fact, which are properly supported by record citation. *See* M.R. Civ. P. 56(h)(1). The Leightons contend that the prior action caused them stress. (CT&F Supp'g S.M.F. ¶ 39.) Mr. Leighton testified at his deposition that the stress was not so severe that it ever caused him to miss work or personal activities and he never sought medical attention. (*Id.* ¶ 40.) Mrs. Leighton also testified that that the stress of the prior action did not prevent her from working and she did not seek medical attention. (*Id.* ¶¶ 43, 46.) Based on the undisputed facts here, the Leightons' claims for intentional infliction of emotional distress must fail.

## CONCLUSION

Based on the foregoing, the Court's entry is as follows:

(1) Defendant TitlePro, LLC's motion for summary judgment on Count I is **GRANTED**.

(2) Defendants Coughlin, Rainboth, Murphy & Lown, P.A., Bradely M. Lown, Esq., U.S. Bank, N.A., and Wells Fargo Bank, N.A.'s motion for summary judgment on Counts III, V, VI, XI, and XII is **GRANTED**.

(3) Defendants Chicago Title and Fidelity's motion for summary judgment on Counts II, IV, IX and XVII is **GRANTED**.

22

(4) Because this Order fully disposes of all remaining claims in this case, any other pending motions are **DENIED** as moot.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 8/16/17

Richard Mulhern
Judge, Business & Consumer Court

Entered on the Docket: 8-16-17
Copies sent via Mail ___ Electronically ✓

23

**Sherman Leighton, et al. v. TitlePro, LLC, et al.**

**BCD-CV-17-29**

### Plaintiff

**Sherman Leighton**

James Levis Esq.
Park One Eleven 409 Alfred St
Biddeford, ME 04005

### Defendants

**TitlePro, LLC,**

Wendell Large, Esq.
465 Congress St
PO Box 9545
Portland, ME 04112

**US Bank NA**
**Coughlin Rainboth**
**Murphy and Lown PA**

Bradley Lown, Esq.
439 Middle St.
Portsmouth, NH 03801

**Fidelity National Title**

James Monteleone, Esq.
PO Box 9729 100 Middle St
Portland, ME 04104

**Wells Fargo Bank NA**

Andrew Shafer, Esq.
30 Danforth St Suite 104
Portland, ME 04101