1999 ME 31

**MAINE ENERGY RECOVERY COMPANY**

v.

**UNITED STEEL STRUCTURES, INC.**

Supreme Judicial Court of Maine.

Argued Oct. 6, 1998.

Decided Feb. 16, 1999.

John H. Montgomery (orally), Gordon F. Grimes, Susan Driscoll, Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for plaintiff.

Harold J. Friedman (orally), Michelle Allott, Friedman, Babcock & Gaythwaite, Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] United Steel Structures, Inc. ("USS") appeals from the judgment entered in the Superior Court (York County, *Fritzsche, J.*) after the court granted Maine Energy Recovery Company's ("MERC's") renewed motion for a judgment as a matter of law pursuant to M.R. Civ. P. 50(b) and set aside a jury verdict in favor of USS on MERC's claims for breach of contract and breach of express warranty. USS contends that the court erred in vacating the jury verdict in favor of USS, entering a judgment for MERC as a matter of law, and awarding $3,334,400.50 in damages to MERC. We agree that the court erred in setting aside the jury verdict and awarding damages to MERC. Therefore, we vacate the judgment and remand for consideration of MERC's motion for a new trial, which the trial court dismissed as moot.

[¶ 2] The parties presented evidence at trial that tended to establish the following facts. The MERC "waste-to-energy" facility in Biddeford produces fuel from garbage and

uses the fuel to produce electricity. In 1983, Kuhr Technology, Inc. ("KTI") entered a contract with General Electric Company ("GE") to design and construct a "turn-key" facility. In 1986, GE and USS entered a contract that obligated USS to design, supply materials for, and construct a metal tipping building and a processing building for MERC. Thereafter, due to the accumulation of moisture inside the completed tipping and processing buildings, substantial corrosion of the buildings occurred. In an attempt to recover damages for the corrosion of the tipping and processing buildings, MERC sued USS for, *inter alia*, breach of contract and breach of express warranty.[1]

[¶ 3] The trial court denied USS's Rule 50(a) motion for a judgment as a matter of law at the close of MERC's case. *See* M.R. Civ. P. 50(a). The court also denied the Rule 50(a) motions that both USS and MERC offered at the close of the evidence. *See id.* After the jury returned a unanimous verdict in favor of USS on all counts, MERC orally renewed its motion for a judgment as a matter of law pursuant to M.R. Civ. P. 50(b). The court denied MERC's Rule 50(b) motion, stating:

> I'm not in the position of deciding whether I agree or disagree with the jury, that's not the task of the judge in a jury case. The jury has been the [factfinder] and if there is substantial evidence to support any of the alternative findings that they could legally have made then the ruling at least at the trial level has to stand, the verdict has to stand.
>
> . . . .
>
> The question becomes: Is there any legitimate basis upon which the jury could have reached the verdict it did?
>
> One of the possible bases is whether . . . from the general conditions provisions . . . this abnormal condition situation applies. [MERC has argued] that we are looking at normal versus abnormal for tipping buildings, but a counterargument can be made that no one, MERC or KTI, USS or Gen-

eral Electric, for whatever reason fully understood what the conditions were going to be inside that building once it was operation[al]. And so an argument can be made that if no one foresaw or anticipated the high degree of humidity that had turned out to be the case that the actual conditions could in fact be abnormal conditions. It is clear that no one specifically and directly said to USS, "We're going to have a lot of moisture in here, folks, you have got to deal with that." [MERC argued] that [USS] should have foreseen that and taken plans to deal with that and, if they didn't, it is their responsibility. But the counterargument can be made that since nobody fully realized that, nobody warned them, nobody directed them, and there is no indication that anybody really realized this, that you can give the word, "abnormal," a different interpretation. . . . Regardless of whether I would have reached a different decision, I don't think in the context of this case that is so clear as to preclude [USS] from making that potential argument and the jury possibly having adopted that as the basis for their decision.

The court entered a judgment for USS on September 18, 1997.

[¶ 4] On September 26, 1997, MERC filed a motion[2] asking the court to reconsider its denial of MERC's Rule 50(b) motion. On December 10, 1997, the court granted MERC's motion, vacated the earlier judgment for USS, and entered a judgment for MERC. With notable brevity, the court's written order stated, in pertinent part:

> After review of the written memoranda and oral argument I am convinced by the facts of the case, the contractual provisions and the legal principles and standards that the jury's verdict cannot be supported and must be set aside. This is a decision that is not lightly made and has been made by me extremely rarely. A careful review of the contractual documents, even when combined with an assessment of the facts

---

1. The court entered a summary judgment for USS "on any claim [by MERC] that there is an implied warranty of merchantability or an implied warranty for a particular purpose."

2. Although entitled "motion for reconsideration," MERC's September 26, 1997 motion was, in essence, a renewed motion for a judgment as a matter of law pursuant to M.R. Civ. P. 50(b).

in the light most favorable to the defendant, compels me to set aside the verdict and enter [a] judgment for the plaintiff in both cases in the uncontested amount sought at trial.

I do not need to reach the issue of whether a new trial should be granted based on conduct of the defendant's lead attorney and will not rule on that issue.

. . . .

Plaintiff's motion for new trial is dismissed as moot.

On December 17, 1997, the court awarded damages to MERC in the amount of $3,334,400.50.

▇ [¶ 5] Rule 50(a) provides that a court may grant a judgment as a matter of law "if the court determines that, viewing the evidence and all reasonable inferences therefrom most favorably to the party opposing the motion, a jury could not reasonably find for that party on an issue that under the substantive law is an essential element of the claim." M.R. Civ. P. 50(a). Pursuant to M.R. Civ. P. 50(b), a party seeking a judgment as a matter of law after trial has the burden of establishing that the adverse jury verdict was "clearly and manifestly wrong." *Townsend v. Chute Chem. Co.*, 1997 ME 46, ¶ 8, 691 A.2d 199, 202.

▇ [¶ 6] When we review the grant of a Rule 50(b) motion for a judgment as a matter of law, we examine the jury's verdict to "determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury verdict." *Townsend*, 1997 ME 46, ¶ 8, 691 A.2d at 202 (quotations omitted). We recently stated:

> In reviewing a trial court's disposition of a motion for [a] judgment as a matter of law, *we view the evidence together with all justifiable inferences in the light most favorable to the party opposing the motion.* The motion should not be granted if *"any reasonable view of the evidence could sustain a verdict for the opposing party . . . ."*

*Lewis v. Knowlton*, 1997 ME 12, ¶ 6, 688 A.2d 912, 913 (quoting *Currier v. Toys 'R' Us, Inc.*, 680 A.2d 453, 455 (Me.1996)) (emphasis added).

[¶ 7] The burden of proof in an action for breach of contract or express warranty is on the plaintiff. The trial court instructed the jury that, in order for MERC to prevail on its contract claim, the jury must find: (1) breach of a material contract term; (2) causation; and (3) damages. The court also instructed the jury that, in order for MERC to prevail on its express warranty claim, the jury must find: (1) that USS made promises amounting to an express warranty; (2) breach of the warranty; (3) causation; and (4) damages.

▇ [¶ 8] Viewing the evidence and all justifiable inferences therefrom in the light most favorable to USS, the jury was not rationally compelled to conclude that MERC had sustained its burden of proving all the above elements of its claims for breach of contract and express warranty. *See Lewis*, 1997 ME 12, ¶ 8, 688 A.2d at 913. Based on all the evidence, reasonable minds could reach different conclusions on dispositive questions of fact. *See Lewis*, 1997 ME 12, ¶ 8, 688 A.2d at 913; *C.N. Brown Co. v. Gillen*, 569 A.2d 1206, 1210 (Me.1990) (discussing j.n.o.v. motions).[3] In fact, the trial court's own comments in denying MERC's original Rule 50(b) motion cogently elucidated a possible rationale for the jury's factual conclusions. A court may not vacate a judgment entered upon a jury verdict in a manner that would constitute a reexamination of the jury's factual conclusions in contravention of article I, section 20 of the Maine Constitution. *Cf. Most v. Most*, 477 A.2d 250, 258 (Me.1984) (examining motion to alter or amend a judgment pursuant to M.R. Civ. P. 59(e)). Therefore, the court erred in vacating the jury verdict and ruling that USS breached the contracts and express warranties as a matter of law.[4]

---

**3.** "If, on the basis of credible evidence in the record, reasonable minds could reach different conclusions in regard to a dispositive factual question, the court may not set aside the conclusion reflected in the jury's verdict." *C.N. Brown Co. v. Gillen*, 569 A.2d 1206, 1210 (Me.1990) (quoting *McCain Foods, Inc. v. St. Pierre*, 463 A.2d 785, 788 (Me.1983)) (discussing j.n.o.v. motions).

**4.** Since we conclude that the court erroneously set aside the jury verdict pursuant to M.R. Civ. P. 50(b), we need not address the other issues USS raised on appeal.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

