MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2014 ME 51
Docket:       Han-13-286
Submitted
 On Briefs:   February 27, 2014
Decided:      April 1, 2014

Panel:        ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

## PHILIP C. TOBIN

v.

## PHILIP N. BARTER

JABAR, J.

[¶1]  Philip C. Tobin appeals from a judgment entered in the Superior Court (Hancock County, *Cuddy J.*) denying his claims for breach of contract, unjust enrichment, and promissory estoppel against Philip N. Barter.  Tobin argues that the court erred in granting Barter's motion for a judgment as a matter of law, notwithstanding the verdict of the jury, which had found that Barter had breached the parties' contract and awarded Tobin $10,000.  *See* M.R. Civ. P. 50(b).  We agree and vacate the court's judgment, and we remand the case to the Superior Court for reinstatement of the jury's verdict.  *See* M.R. Civ. P. 50(c).

## I.  BACKGROUND

[¶2]  The evidence in the record supports the following facts, viewed in the light most favorable to Tobin as the party opposing the Rule 50 motion.  *See Lewis*

2

*v. Knowlton*, 1997 ME 12, ¶ 6, 688 A.2d 912. In December 2009, Barter, who has been an artist in Maine for fifty years, hired Tobin to "produce a book for publication and sale encompassing Barter's artistic work product over the years." The parties entered into a written agreement, which provided that Tobin would write the "text requisite to presenting the scope of Barter's many artistic creations . . . subject to Barter's final approval" in a book titled *Philip Barter, Forever Maine*, and that he would make arrangements with a photography studio in Ellsworth to obtain print-quality images of Barter's paintings. The agreement provided that Tobin would "receive fifty percent (50%) of the net proceeds from the sale of the aforementioned[] publication" in exchange for his "time and effort in producing said book for publication." Additionally, the agreement stated that Barter would provide Tobin with funds up to $5000 and the photographs of his artwork "necessary for accomplishing Tobin's . . . agreed-upon manuscript responsibilities." Barter testified that, once the book was published, he anticipated that the parties would receive "$35,000 each in the first year" of profit from the sales of the book.

[¶3] At the outset, Tobin and Barter agreed to select approximately 200 images of Barter's paintings to include in the book. To start the selection process, the parties first sent 1490 images of Barter's paintings to have them digitally rescanned to improve the image quality. From those images, Barter then selected

403 images that the photography studio in Ellsworth enhanced to print quality. While the images were being processed, Tobin consulted with Barter weekly to notify him of the progress of the image enhancement. Although Barter believed that the image selection process was incomplete, he selected 208 of the images for possible inclusion in the book and gave Tobin the titles and dimensional descriptions of those images.

[¶4] Using those 208 images, Tobin drafted a manuscript of the book. On December 13, 2010, Tobin went to Barter's home in Franklin, gave him a draft of the manuscript, and informed him that Barter could make changes if "he stayed in context" of the book's title. After not having received a response from Barter Tobin sent a letter to Barter on February 11, 2011, in an attempt to "explain the tension that has [a]risen between [the parties] with regard to the selection of the works to be included in the book." Barter did not respond to the letter.

[¶5] On August 15, 2011, Tobin filed a complaint in the Hancock County Superior Court alleging that Barter had breached the parties' contract, or, alternatively, that Tobin was entitled to relief on the basis of promissory estoppel or unjust enrichment. Tobin requested $50,000 in damages. Barter moved for summary judgment on all three counts, but the court denied the motion, reasoning that "whether a contract exists and whether a breach has occurred are all questions of fact for the jury to decide as fact finder."

4

[¶6]   The court held a jury trial on May 13, 2013, during which Tobin, Barter, and Barter's wife testified.  When Tobin rested his case, Barter moved pursuant to M.R. Civ. P. 50(a) for a judgment as a matter of law on Tobin's claim for breach of contract, arguing that, although the parties agreed that there was a contract, Tobin had presented no evidence that Barter had breached it.  The court reserved its judgment on the motion to "allow the jury to decide the underlying factual question subject to the Court's decision on the Rule 50 motion."  *See* M.R. Civ. P. 50(b).  Barter did not present any evidence, and renewed his motion for judgment as a matter of law pursuant to Rule 50(b).  The jury returned a verdict in favor of Tobin, finding that there was an enforceable contract, and that Barter had breached the contract.  The jury awarded Tobin $10,000 in damages.

[¶7]   The next day, May 14, 2013, the court issued a written decision granting Barter's motion for a judgment as a matter of law.  The court concluded that, with respect to the breach-of-contract claim, Tobin and Barter "had a very different understanding of what their agreement was," and that Tobin had failed to present sufficient evidence that the parties had a meeting of the minds necessary to form a legal contract.  The court also denied Tobin's unjust-enrichment and promissory-estoppel claims, concluding that Tobin had failed to present sufficient evidence of an enforceable promise and of damages.  Tobin timely appealed.  M.R. App. P. 2(b)(3).

## II. DISCUSSION

[¶8]   On appeal from a judgment entered as a matter of law pursuant to Rule 50(b), "we examine the jury's verdict to determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury's verdict." *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 6, 724 A.2d 1248 (quotation marks omitted).  A motion for a judgment as a matter of law after the jury has rendered a verdict "should not be granted if any reasonable view of the evidence could sustain a verdict for the opposing party."  *Lewis*, 1997 ME 12, ¶ 6, 688 A.2d 912 (quotation marks omitted).  Rather, "[v]iewing the evidence and all justifiable inferences therefrom in the light most favorable to [the nonmoving party]," the court should grant a Rule 50(b) motion only if the jury was "rationally compelled" to conclude that the moving party is entitled to judgment in its favor, and should deny the motion if "[b]ased on all the evidence, reasonable minds could reach different conclusions on dispositive questions of fact."  *Me. Energy Recovery Co.*, 1999 ME 31, ¶ 8, 724 A.2d 1248.

[¶9]   To demonstrate that the parties had a legally binding contract, the plaintiff must establish that there was a meeting of the minds between the parties— or "mutual[] assent to be bound by all [the] material terms" of the contract. *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625; *see also* Restatement

(Second) of Contracts § 17 & cmt. c (1981). "The existence of an agreement, involving as it does so intricately the conduct of the parties, is appropriately a question for the trier of fact." *Agway, Inc. v. Ernst*, 394 A.2d 774, 777 (Me. 1978).

[¶10]  In order to obtain relief for a breach of that contract, the plaintiff must also demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages.  *See Me. Energy Recovery Co.*, 1999 ME 31, ¶¶ 7-8, 724 A.2d 1248.  "Similarly, the question of whether there has been a breach of contract is a question of fact," *VanVoorhees v. Dodge*, 679 A.2d 1077, 1080 (Me. 1996), and "[t]he assessment of damages is within the sole province of the factfinder," *Down E. Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 7, 697 A.2d 417.

[¶11]  Here, the court erred when it entered a judgment in favor of Barter, notwithstanding the jury's verdict in favor of Tobin, based on its determination that there was no "meeting of the minds." *See* M.R. Civ. P. 50(b).  Barter had informed the court in making his Rule 50 motion that "both of the parties agreed that there was a contract."  Additionally, a rational jury could have found that the parties' agreement was "sufficiently definite to enable [it] to ascertain its exact meaning and fix exactly the legal liabilities of each party" based on the record evidence. *Sullivan*, 2004 ME 134, ¶ 13, 861 A.2d 625.  Thus, the court erred in issuing its

judgment in favor of Barter as a matter of law. *See Me. Energy Recovery Co.*, 1999 ME 31, ¶¶ 5-8, 724 A.2d 1248; *Agway, Inc.*, 394 A.2d at 777.

[¶12] Moreover, the evidence in the record supports the jury's verdict on the remaining elements of Tobin's breach-of-contract claim. A jury rationally could have found that Barter had materially breached the contract by failing to respond to Tobin. *See Associated Builders, Inc. v. Coggins*, 1999 ME 12, ¶¶ 6-7 & n.1, 722 A.2d 1278 (enumerating factors relevant in determining if a failure to render performance is a material breach); Restatement (Second) of Contracts § 241 (1981) (same). Additionally, the evidence in the record reasonably supports the jury's award of $10,000 in damages to Tobin. *See Down E. Energy Corp.*, 1997 ME 148, ¶ 7, 697 A.2d 417 (stating that a jury is permitted to award damages based on "judgmental approximation" if the "amount of damages may be determined to a probability" (quotation marks omitted)).

[¶13] Because a reasonable view of the evidence supports the jury's verdict, we remand the case for entry of a judgment reinstating the jury's verdict in favor of Tobin. *See* M.R. Civ. P. 50(c).

The entry is:

> Judgment vacated. Remanded for entry of a judgment reinstating the jury verdict in favor of Tobin.

**On the briefs:**

Philip C. Tobin, appellant pro se

Peter R. Roy, Esq., Roy, Beardsley, Williams & Granger, LLC, Ellsworth, for appellee Philip N. Barter

Hancock County Superior Court docket number CV-2011-54
FOR CLERK REFERENCE ONLY