STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-19-353

JOHN B. PRIDE, INC.,

Plaintiff

v.

DANIEL L. KINCH,

Defendant

ORDER ON MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIMS

The matter before the court is Plaintiff John B. Pride, Inc.'s ("Pride") motion to dismiss

Defendant Daniel Kinch's ("Kinch") counterclaims in this breach of contract action.

Factual Background

The following facts are drawn from Kinch's Counterclaim, which for the purposes of this

motion must be considered true.

Kinch owns a Terex 72-31b Articulated Wheel Loader ("Loader") equipped with a

Detroit series 4-71 Model 1043-8300 diesel engine ("Engine"). (Def.'s Countercl. ¶ 1-2.) When

Kinch suspected that the Engine needed repairs, he contacted Pride seeking diagnostics and

repairs. (Def.'s Countercl. ¶ 2.) Pride estimated that he could rebuild the Engine for $14,523,

using what he considered to be "worst case scenario" figures. (Def.'s Countercl. ¶ 3.) On April

12, 2019, Kinch delivered the Loader to Pride so he could begin work. (Def.'s Countercl. ¶ 4.)

The contract was finalized at Pride's personal home on April 24, 2019. (Def.'s Countercl. ¶ 5.)

Under this contract, Pride would diagnose, repair and paint the Engine. (Def.'s Countercl. ¶¶ 3-5,

9.) Kinch and Pride orally agreed that Kinch would use his own labor to lower the cost of the

repair. *Id.*

1

Unforseen problems arose during the repair, which lead to unexpected costs. (Def.'s Countercl. ¶ 9.) Eventually, however, the Loader was returned to Kinch on May 28, 2019, though the Engine was unpainted. *Id.* Pride's agents returned the following day to continue reinstalling the Engine into the Loader. (Def.'s Countercl. ¶ 10.) During the course of that day, Pride's agents damaged an essential "rubber intake boot." *Id.* Installation was completed and the engine was tested by the end of the day. *Id.* Pride's agents stated that the repairs were complete and normal operation of the Loader could resume. *Id.*

Pride communicated the final price for the repairs on May 31, 2019. (Def.'s Countercl. ¶ 11.) This price was $3688.40 greater than the estimate made by Pride before undertaking the repair. *Id.* On June 2, 2019, Pride informed Kinch that there was a serious defect with the Engine that could render the Engine totally unusable if he attempted to use the Loader. (Def.'s Countercl. ¶ 12.) Pride promised to repair this defect. *Id.* Kinch ceased all use of the Loader after receiving this information.

No repairs were conducted. Kinch reached out many times demanding "written documentation" of the faulty part. (Def.'s Countercl. ¶¶ 15-27.) After several miscommunications, Pride managed to contact Kinch's father on July 19, 2019. (Def.'s Countercl. ¶ 20.) Pride told Kinch's father that the correct part had been used in the repair and there was no danger. *Id.* Kinch refused to accept Pride's assurance without written documentation and continued to make repeated demands for such. (Def.'s Countercl. ¶¶ 21-27.) Kinch has not paid Pride for the work, nor has he resumed use of the Loader. (Def.'s Countercl. ¶ 28.)

Procedural History

On August 26, 2019, Pride filed a complaint alleging breach of contract, unjust enrichment and *Quantum Meruit* against Kinch. After multiple unsuccessful attempts to serve process on Kinch, this Court granted authorized service by alternate means on November 6, 2019. Kinch replied by filing what he called an "Affidavit of Default Judgement" and an "Affidavit of Counter Claim" on December 18, 2019. Pride moved for default on December 19, 2019. On March 4, 2020, this Court denied the motion, and ordered that Kinch's "Affidavit of Counter Claim" be treated as an answer and counterclaim. On March 19, 2020, Pride filed an answer to Kinch's counterclaim. Pride then filed the present Motion to Dismiss Counterclaims on June 16, 2020. Kinch is appearing pro se.

Standard of Review

When ruling on a motion to dismiss for failure to state a claim pursuant to M.R. Civ. P. 12(b)(6), the court views the "facts alleged in the complaint as if they were admitted." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254 (*per curiam*) (quotation marks omitted). A complaint must set forth the "elements of a cause of action or allege[] facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* Facts are read in the light most favorable to the plaintiff. *Id.* "Dismissal is warranted only when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that might be proved in support of the claim." *Halco v. Davey*, 2007 ME 48, ¶ 6, 919 A.2d 626 (quotation marks omitted).

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." M.R. Civ. P. 8(a). "Notice pleading requirements are forgiving; the plaintiff need only give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief." *Desjardins v. Reynolds*, 2017 ME 99, ¶ 17,

3

162 A.3d 228 (quotation marks omitted). On the other hand, "a party may not proceed[] on a cause of action if that party's complaint has failed to allege facts that, if proved, would satisfy the elements of the cause of action." *Burns v. Architectural Doors and Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823. Allegations of fraud must be plead with particularity. M.R. Civ. P. 9(b). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

"Pro se litigants are held to the same standards are held to the same standards as represented parties." *Dep't of Envtl. Prot. v. Woodman*, 1997 ME 164, ¶ 3 n.3, 697 A.2d 1295. "This is particularly true in areas so fundamental as the service of process and the statement of a claim." *Uotinen v. Hall*, 636 A.2d 991, 992 (1994).

## Discussion

Pride's motion to dismiss argues that Kinch's counterclaim asserts a single cause of action for breach of contract. Pride argues that Kinch failed to allege a genuine breach and that he failed to allege legally cognizable damages. (Pl.'s Mot. 4-6.) Kinch replies that he alleged 9 different ways that Pride breached its contractual duties. (Def.'s Reply 1.)

As a threshold matter, what Kinch refers to as "breach of contract" claims are actually a mix of contract and tort claims. In particular, Kinch argues that Pride's instructions to stop usage of personal property in issue indicated that they still had "possession and authority" of his property. (Def.'s Reply 5.)

## Breach of Contract

In order to state a claim for breach of contract, a legally binding contract must first exist. *Tobin v. Barter*, 2014 ME 51, ¶ 9, 89 A.3d 1088. A contract exists when the parties "mutually

4

assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625. Contracts may be oral or written.

Once a contract is established, a party seeking relief under a breach of contract theory must establish a breach of a material term of the contract that caused them to suffer damages. *Tobin*, 2014 ME 51, ¶ 10, 89 A.3d 51. This means that there must be more than a mere breach of the letter of the contract, the term that was breached must be one the parties mutually manifested their assent to.

Kinch claims that his counterclaim alleges 9 breaches of contract:

1. Abandonment of the contract (¶16-27);
2. taking unauthorized actions (¶ 7,9);
3. failing to complete specific contracted services (¶9);
4. prohibiting the use of my labor during the repair to reduce overall costs (¶ 4);
5. interfering and stopping my request to a competitor for a second opinion and estimate for repair (¶ 1);
6. submitting a final bill that exceeded the contracted amount (¶ 11);
7. Failing to complete(nonperformance) the repair resulting in an operational motor (¶10, 12);
8. failing to provide official confirmation of contract completion in the same format previously established (¶19-27); and
9. creating a fraudulent misrepresentation destroying the value of the contract (¶12-27).

(Def.'s Reply 1-2.)

Kinch plainly fails to allege that there existed any contractual duty for Pride to seek his authorization for every action he took while repairing the Engine, nor does he allege that written confirmation was necessary to complete performance under the terms of the contract. The factual allegations of his complaint make it clear that his request for written documentation came at the

5

close of Pride's performance and was a new request designed to allow Kinch to seek out a new mechanic. (Def.'s Countercl. ¶ 15.) Accordingly, these claims must be dismissed.

What Kinch refers to as an abandonment of the contract is actually another way of framing his argument that the contract was not complete until he received written documentation of the repairs. (Def.'s Countercl. ¶ 16-27.) As noted above, he alleged no such contractual duty. His abandonment claim must also be dismissed. (See also discussion of a possible conversion claim, *supra,* which also fails and must be dismissed.)

Kinch does not plead any facts that would support an inference that Pride interfered in his business dealings with another firm. At most, he alleged that Pride's quote caused him to choose to do business with him rather than another entity. (Def.'s Countercl. ¶ 1-3.) This is paradigmatic competition in the marketplace, not interference with any pre-existing contractual arrangement. As such, Pride fails to state a claim on this basis.

Kinch's claim that Pride overcharged him is also insufficiently plead. He apparently relies on Pride's alleged confidence that the project would be completed within the cost estimated before performance commenced. He alleges, essentially, that this estimate was binding on the parties. However, he is clear that the parties both referred to this price as an estimate, the plain meaning of which would imply some flexibility in the figure. Estimates are often upset by unforeseen circumstances. Kinch's argument that Pride's assurances that the estimate was based on a "worst case scenario" meant that it was binding on the final price is unpersuasive. (Def.'s Countercl. ¶ 3.) Without something more akin to a concrete agreement on a price, Kinch fails to allege that Pride had any duty to charge below his estimate.

Kinch's claims of fraudulent misrepresentation are plead with far less particularity than required by M.R. Civ. P. 9(b). Kinch only avers generally "that he began to feel" as though John

6

Pride acted fraudulently, but does not allege any particular facts which could support such a finding by this court. Importantly, he does not allege that any of Pride's representations were actually false. Therefore, his claims of fraudulent misrepresentation must be dismissed.

The rest of Kinch's claims plausibly allege breaches of contractual duties. For "failure to complete specific contracted services," Kinch alleges that Pride agreed to paint the engine and failed to do so. If true, this could constitute a failure to perform.

As far as his own contribution of labor to the project goes, Kinch alleges that Pride orally agreed to this arrangement and failed to follow through. This makes out an allegation that Kinch and Pride had a separate oral contract that Pride breached, causing Kinch to incur greater costs during the repairs.

Finally, Kinch alleges that Pride tore a rubber intake boot that required immediate repair. He alleges that Pride failed to fix the part and assured him that the machine was functional. Assuming that Kinch's assertion that the boot required immediate repair and left the engine in a more or less damaged state is true, he has plausibly alleged that Pride breached a contractual duty.

Kinch's counterclaim can be fairly read to allege 4 sources of damages. He claims that he suffered damages when (1) he was denied the chance to reduce billable hours by using his own labor, (2) Pride damaged a rubber intake boot while conducting repairs, (3) Pride charged him more than the maximum price they agreed on, and (4) Pride deprived him of the use of his property by failing to give him a written guarantee that the repairs were complete. (Def.'s Countercl. ¶¶ 4, 9-10, 11, 15-27.)

7

None of these damages are applicable to the alleged failure to paint the motor. Kinch never alleges that he had the engine painted after Pride failed to do so. Therefore, he has not plead damages as to that contract claim and it must be dismissed.

Pride argues that recovery for the loss of a motor vehicle is governed by 14 M.R.S.A. § 1454. The statute provides:

> In any action where recovery is sought for the destruction or damage of a motor vehicle, the owner of such motor vehicle shall be entitled to recover reasonable rental costs actually expended for a replacement motor vehicle during such time, not to exceed 45 days, as damaged motor vehicle could not be operated or during such time, not to exceed 45 days, as is required to obtain a replacement motor vehicle for the destroyed motor vehicle.

14 M.R.S.A. § 1454 (2020). The Law Court has ruled that this statute applies to both personal and commercial vehicles. *Flynn Constr. Co. v. Poulin*, 570 A.2d 1200, 1202 (1990). This court assumes that the front loader at issue in this case is a motor vehicle for the purposes of this statute. Pride argues that because this statute only allows for the recovery of costs actually incurred and Kinch never alleges he actually rented a replacement vehicle, he is barred from all recovery.

Pride's argument may be correct as to certain claims for damages, but this court does not need to reach it. This argument would only apply to Kinch's claim that he was deprived of the value of his property by Pride's failure to give him written documentation. Similarly, the purported overcharge was not in violation of any plead contractual duty. Neither of these constituted a breach, so he was not damaged.

On the other hand, 14 M.R.S.A. § 1454 does not apply to the other sources of damages. Those are all claims for damages to either Kinch personally or to the motor vehicle. *See Jones v. Suhre*, 345 A.2d 515, 518 (1975) (14 M.R.S.A. § 1454 not applicable to damages to the vehicle).

As such, Kinch does seem to have plead legally cognizable damages as to two of the remaining contract claims.

Kinch states two contract claims that, taking his factual allegations to be true, cannot be dismissed at this stage. He alleges that Pride breached their contract by failing to fully repair the motor, based on a torn rubber intake boot. He also claims that he had an additional oral contract with Pride that entitled him to contribute his own labor to the repairs which was not honored. With respect to these two claims, he is entitled to proceed to discovery and seek evidence to prove them.

## Conversion

Kinch's primary counterclaim, that Pride deprived him of the use of his power loader by failing to provide written documentation, is perhaps better construed as a claim for conversion. So, for the sake of clarity the court will discuss a claim possibly based on conversion. "The gist of conversion is the invasion of a party's possession or right to possession at the time of the alleged conversion." *General Motors Acceptance Corp. v. Anacone*, 197 A.2d 506, 524 (1964). Kinch claims that the failure to provide written documentation and the Pride advising him to cease use of the loader "can only be recognized as [Pride] still having possession and authority of my property." (Def.'s Reply 5.)

> The elements of conversion are:
>
> (1) a showing that the person claiming that his property was converted has a property interest in the property; (2) that he had the right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for its return that was denied by the holder.

*Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798. Kinch clearly has both a property interest in the loader and a right to possession at the time of the alleged conversion. He also made a

9

demand that the property be "returned." However, the fact remains that he was in possession of the loader the whole time. Pride's recommendation that he not use the loader did not interfere with his interest in the property, because Kinch was fully able to disregard Pride's suggestion if he wished. In other words, he could not demand that the property be returned because it had already been returned.

Kinch's counterclaim for conversion based on a failure to provide written documentation must be dismissed.


## Defamation Claim

Kinch argues in his reply that a reference to him as a "twisted moron" in discovery documents he received from Pride's counsel is libelous. (Def.'s Reply 9.) He asks that the person who made this remark be barred from signing documents on behalf of Pride and that the court enter some judgement against Pride for allowing this allegedly libelous statement to be circulated. *Id.*

Plainly, there is no basis for such a motion. Were Kinch attempting to add a count of libel to his counterclaim, he would need to file a motion to amend. M.R. Civ. P. 15(a). Even if this court were to treat this as a motion to amend, it would be denied. Courts deny motions to amend that would be futile. *See, e.g., Hofland v. LaHaye*, No. 1:09-CV-00172-JAW, 2010 U.S. Dist. LEXIS 118288, at **12-14 (D. Me. Nov. 4, 2010). "An essential element of libel is that the publication in question must contain a false statement of fact." *Caron v. Bangor Pub. Co.*, 470 A.2d 782, 784 (1984). The statement at issue here is plainly an opinion, albeit an unflattering one. This claim would necessarily be dismissed, so leave to amend would not be granted.

10

Given Kinch's requested relief, he may be requesting that the court impose sanctions on Pride for this alleged libel. If so, this court declines. Not only is that outside of the scope of the motion being considered here, there is no basis under the Rules for granting sanctions for a discovery issue of this kind.

Conclusion

Kinch has two possibly viable breach of contract claims that survive Pride's Rule 12(b)(6) motion to dismiss. Those claims are that Pride breached their contract by failing to fully repair the motor, based on the torn rubber intake boot, and breached the oral contract entitling Kinch to contribute his own labor. These are the only two counterclaims that Kinch can pursue further and on which the parties may conduct discovery to seek evidence to prove or disprove their viability.

The entry is

> Plaintiff John B. Pride, Inc.'s Motion to Dismiss Defendant's Counterclaim is DENIED as to the two above-noted breach of contract claims and GRANTED as to the remainder.
>
> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: _____, 2020

Harold Stewart, II
Justice, Superior Court

Entered on the Docket: _____

11