MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 62
Docket:        BCD-23-454
Argued:        June 6, 2024
Decided:       August 13, 2024

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.

RANDALL C. BELYEA

v.

HEATHER A. CAMPBELL

LAWRENCE, J.

[¶1]  Randall C. Belyea appeals from decisions of the Business and Consumer Docket (BCD) (*Duddy, J.*) (1) granting Heather A. Campbell's motion for judgment as a matter of law on Belyea's claim for conversion and (2) entering, notwithstanding a jury verdict in favor of Belyea, a judgment as a matter of law in favor of Campbell on Belyea's claim for breach of contract. Belyea contends that the court erred in concluding there was insufficient evidence of an enforceable contract between him and Campbell and that, because a contract did exist, the court also erred in denying his claim for conversion against Campbell.  We disagree and affirm.

# I. BACKGROUND

## A. Facts

[¶2] "The evidence in the record supports the following facts, viewed in the light most favorable to" Belyea. *Tobin v. Barter*, 2014 ME 51, ¶¶ 1-2, 89 A.3d 1088.

[¶3] In 2011, Belyea was the sole shareholder and president of Belyea Enterprises, Inc. (BEI), a corporation that delivered FedEx packages along certain routes under a five-year contract with FedEx that expired on September 23, 2016. The contract with FedEx identified Belyea as the "Authorized Officer" for BEI. Belyea maintained BEI's trucks; hired, fired, and communicated with BEI's drivers; and, as the sole shareholder, was entitled to BEI's net profits realized from the contract.

[¶4] In the spring of 2016, while negotiating a renewal of the contract with FedEx, Belyea was informed that FedEx would not renew the contract because he was "disqualified as a FedEx contractor" as a result of a misdemeanor charge from 2012. Due to his disqualification, Belyea was not allowed to be present at the FedEx terminal, drive a vehicle associated with FedEx, or meet with FedEx representatives. The sole source of BEI's income was the FedEx contract.

[¶5] Belyea had always planned to leave BEI to his oldest son and, after learning that he was "disqualified as a FedEx contractor," decided to put the contract in his son's name immediately and to transfer his interest in BEI to his son in exchange for payment and his continued employment. Campbell, who was Belyea's fiancée and BEI's bookkeeper, wanted Belyea to put the contract in her name instead of his son's name. Campbell "promised" Belyea that "[n]othing was going to change" regarding the business; Belyea would continue to own the business and remain entitled to its profits, and Campbell would be "owner on paper only" and "deal with" the FedEx representatives at the terminal. Belyea understood this to mean that he would remain the owner and run the business.

[¶6] BEI ultimately "executed a renewal contract with the understanding that [Belyea] would transfer his ownership in BEI to Campbell and that Campbell" would be the "Authorized Officer" in the new contract. On August 10, 2016, Belyea "transferred all of his stock in BEI to Campbell and resigned all corporate offices." Campbell assumed those offices and became BEI's sole shareholder. Belyea "received no monetary compensation from Campbell in exchange for" his BEI stock. BEI had debt from financing the trucks it owned, but there was money in BEI's bank accounts.

4

[¶7]  Ostensibly, Belyea's role at BEI did not change, other than the aforementioned restrictions expressly imposed by FedEx, until 2018.  The BEI accounts were still in Belyea's name.  Belyea's son knew that BEI was still Belyea's business but that it was just in Campbell's name.  Campbell listed Belyea as the owner on a loan application and referred to BEI as his business.  At the end of 2018, however, Campbell asked Belyea to leave her home, terminated his employment with BEI, and restricted his access to BEI's bank accounts.

## B.    Procedure

[¶8]  On January 14, 2019, Belyea filed a complaint in the Superior Court (Aroostook County) against Campbell.[1]  Belyea's complaint contained ten counts: conversion (Count 1), unjust enrichment (Count 2), fraud (Count 3), constructive trust (Count 4), tortious interference with an advantageous relationship (Count 5), fraudulent transfer (Count 6), punitive damages (Count 7), breach of contract (Count 8), accounting (Count 9), and injunctive relief (Count 10).[2]  With respect to Count 1, Belyea alleged that Campbell

---

[1]  The complaint also named, as parties in interest, BEI; Federal Express Corporation; and Tobias Henderson, whom Belyea alleged was Campbell's cousin.

[2]  Only Counts 1 and 8 are at issue on appeal.

"succeeded to the title" of BEI's president "in name only"; that Campbell "understood her limited role in the transfer of ownership," with Belyea "continu[ing] to be the sole beneficial owner" of BEI; and that Campbell's refusal to relinquish ownership of BEI constituted conversion of Belyea's interest in BEI. With respect to Count 8, Belyea alleged that the transfer of his ownership to Campbell constituted a contract, which Campbell breached.

[¶9] With the complaint, Belyea also filed a motion for a temporary restraining order, and the court (*Stewart, J.*) signed a temporary restraining order that day enjoining Campbell from "selling, transferring, or encumbering" BEI or any assets of BEI.

[¶10] On February 14, 2019, Belyea filed an amended complaint, which named FedEx Ground Package System, Inc., in place of Federal Express Corporation as a party in interest.[3] On February 15, 2019, Campbell filed an answer. The BCD (*Duddy, J.*) accepted the case for transfer. On March 4, 2022, a joint pretrial statement was filed, and on October 26, 2023, stipulated facts were filed.

---

[3] The parties in interest ultimately obtained final judgment in their favor, and Belyea did not appeal from the judgment as to them. This opinion does not discuss the parties in interest further.

6

[¶11]   A four-day jury trial was held from October 30 through November 2, 2023.  Six of the counts (Counts 1, 3, and 5 through 8) were tried before the jury.  After Belyea rested, Campbell moved for judgment as a matter of law.   The court granted Campbell's motion with respect to Count 1 (conversion), Count 5 (tortious interference), and Count 6 (fraudulent transfer).   Regarding Count 1, the court confirmed that Belyea was alleging conversion in 2018.  The court determined that because Campbell was the sole owner of the BEI stock when Belyea demanded the return of property in 2018, "Belyea had no legal interest in the company at all" and "no right to demand its return under a conversion claim."

[¶12]   The court reserved judgment on the motion regarding Count 3 (fraud), Count 7 (punitive damages), and Count 8 (breach of contract). At the conclusion of all the evidence, Campbell renewed her motion for judgment as a matter of law.  The court stated that the counts were "hanging by a thread" and that it was concerned "that the alleged terms of the alleged contract are too ambiguous," but it reserved ruling on the motion and allowed the counts to be presented to the jury to ensure judicial economy.

[¶13] The jury found against Belyea on Count 3 (fraud), and, considering this verdict, the court later entered judgment in favor of Campbell on Count 7

(punitive damages). Regarding Count 8 (breach of contract), the jury determined that Belyea proved, by a preponderance of the evidence, that Campbell breached their contract and caused him damages, and it awarded him $250,000. Campbell then renewed her motion for judgment as a matter of law, notwithstanding the jury verdict, regarding Count 8. The court granted the motion and entered judgment as a matter of law in favor of Campbell on that count.

[¶14] The court concluded that the jury could not have reasonably found for Belyea on an "essential element of the claim"—that the parties had reached "a meeting of the minds on specific terms to form a contract"—because the terms of the alleged contract were "vague, indefinite, not specific, and probably impossible to use as a term, even if they were specific."[4] The court further explained that none of the terms would "allow for a sufficiently definite understanding to permit enforcement"; that it was "not possible that things were going to remain the same" because Belyea could no longer, inter alia, communicate with FedEx or negotiate contracts for BEI; and that the alleged

---

[4] The court stated, "The terms had been variously framed by [Belyea] as . . . the business would continue to belong to Mr. Belyea. Nothing would change. Ms. Campbell would remain an owner on paper only. Mr. Belyea would retain the benefit of ownership. And that's pretty much the agreement and pretty much what was described in the complaint."

8

contract's terms did not provide, for example, any length of time for the terms to remain in effect or anything regarding reconveyance.

[¶15] The court next addressed Count 2 (unjust enrichment), which was tried to the bench, and it entered judgment in favor of Belyea in the amount of $63,534. The court then addressed and entered judgment in favor of Campbell on the remaining counts: Count 4 (constructive trust), Count 9 (accounting), and Count 10 (injunctive relief). The court vacated the previously entered preliminary injunction.

[¶16] On November 7, 2023, the court entered a written judgment in favor of Campbell on Counts 1 and 3 through 10 and in favor of Belyea on Count 2 in the amount of $63,534. Belyea timely appealed.

## II. DISCUSSION

### A. Breach of Contract

[¶17] Belyea contends that the court erred in concluding there was insufficient evidence of an enforceable contract. He argues, inter alia, that the contract was definite and sufficiently specific, particularly considering the parties' close relationship; that there was evidence of the parties' intent to be bound by the contract's terms, including the post-contract conduct of the "parties and those around them"; that the contract was enforceable, even

assuming terms were missing; and that performance was possible and occurred. He contends that the terms of the contract were "(1) [Campbell] would receive BEI in name only ('on paper'), and (2) [Belyea] would retain ownership except 'on paper.'"[5]

[¶18]  Pursuant to M.R. Civ. P. 50(a), a court may grant a motion for judgment as a matter of law before submitting a claim to the jury "if the court determines that, viewing the evidence and all reasonable inferences therefrom most favorably to the party opposing the motion, a jury could not reasonably find for that party on an issue that under the substantive law is an essential element of the claim." Pursuant to M.R. Civ. P. 50(b), "[i]f a verdict was returned the court may . . . reopen the judgment and . . . direct the entry of judgment as a matter of law."

[¶19]  "On appeal from a judgment entered as a matter of law pursuant to Rule 50(b), we examine the jury's verdict to determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury's verdict." *Tobin*, 2014 ME 51, ¶ 8, 89 A.3d 1088 (quotation marks omitted); *see Me. Energy Recovery Co. v. United Steel*

---

[5]  Belyea requests that we vacate the court's judgment and remand for the court to reinstate the jury's award in his favor, which might "also include the creation of a constructive trust (Count [4]) to administer the disbursement of that award."

*Structures, Inc.*, 1999 ME 31, ¶ 6, 724 A.2d 1248 ("In reviewing a trial court's disposition of a motion for a judgment as a matter of law, we view the evidence together with all justifiable inferences in the light most favorable to the party opposing the motion." (quotation marks, alteration, and emphasis omitted)). "If on appeal" we find "that the court has erroneously entered a judgment as a matter of law after trial, [we] may reinstate any verdict and direct the entry of judgment thereon." M.R. Civ. P. 50(c).

[¶20] "Generally, the existence of a contract is a question of fact to be determined by the jury." *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625 (quotation marks and alteration omitted). "To demonstrate that the parties had a legally binding contract, the plaintiff must establish that there was a meeting of the minds between the parties—or mutual assent to be bound by all the material terms of the contract." *Tobin*, 2014 ME 51, ¶ 9, 89 A.3d 1088 (quotation marks and alterations omitted). The assent must be "either expressly or impliedly manifested in the contract." *Sullivan*, 2004 ME 134, ¶ 13, 861 A.2d 625.

[¶21] Further, the contract must be "sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Id.*; *Ault v. Pakulski*, 520 A.2d 703, 704 (Me. 1987) ("There is no more

settled rule of law applicable to actions based on contracts than that an agreement, in order to be binding, must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liability of the parties." (quotation marks and alteration omitted)); *Doe v. Lozano*, 2022 ME 33, ¶ 13, 276 A.3d 44 ("For a binding agreement to exist, the parties must have mutually intended to be bound by terms sufficiently definite to enforce." (quotation marks omitted)).  According to the Restatement (Second) of Contracts, "a manifestation of intention . . . intended to be understood as an offer . . . cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain."  Restatement (Second) of Conts. § 33(1) (Am. L. Inst. 1981).  "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."  *Id.* § 33(2).  "[M]issing or indefinite essential terms may, in certain cases, preclude a reasonably calculable remedy or indicate a lack of contractual intent so as to render an agreement unenforceable . . . ."  *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 18, 983 A.2d 382.  Such indefiniteness might "relate to the time of performance, the price to be paid, work to be done, property to be transferred or other miscellaneous stipulations of the agreement."  *Id.* (quotation marks omitted).

[¶22]   "However, lack of a key term is not necessarily fatal to the enforcement of a contract, as long as the missing term does not indicate a lack of contractual intent."  *Pelletier v. Pelletier*, 2012 ME 15, ¶¶ 15-16, 36 A.3d 903 (explaining that "[a] court may supply a key term missing from a contract using the standard of reasonableness").   Further, "[p]art performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been formed."  Restatement (Second) of Conts. § 34(2); *see also* Restatement (Second) of Conts. § 34 cmt c.  "For a contract to be enforceable, the parties thereto must have a distinct and common intention which is communicated by each party to the other."  *Stanton v. Univ. of Me. Sys.*, 2001 ME 96, ¶ 13, 773 A.2d 1045 (quotation marks omitted).

[¶23]  We conclude that the court did not err in determining that a jury could not reasonably find that the terms of the purported agreement between Belyea and Campbell were sufficiently definite to form an enforceable contract. *See Bragdon v. Shapiro*, 146 Me. 83, 84-89, 77 A.2d 598, 599-601 (1951); *Ross v. Mancini*, 146 Me. 26, 26-28, 76 A.2d 540, 540-41 (1950).  Even viewing the facts in the light most favorable to Belyea, the terms of the alleged contract did not "fix exactly the legal liabilities of each party."  *Sullivan*, 2004 ME 134, ¶ 13, 861 A.2d 625.  Belyea argues that "[a]ny attempt by [Campbell] to assert

ownership over BEI, other than in name only, would immediately incur liability." Even assuming that this contention is true and that the parties mutually assented to Campbell owning the business in name only with Belyea remaining the actual owner and running the business, it is not clear what actions Belyea would have to take to comply with or to violate the contract. *See Ault*, 520 A.2d at 704 ("A court cannot enforce a contract unless it can determine what it is." (quotation marks omitted)); *Cote v. Dep't of Hum. Servs.*, 2003 ME 146, ¶¶ 2, 3 & n.2, 837 A.2d 140 ("[B]efore a court supplies any terms, it must find that the parties mutually assented to an agreement that, at a minimum, contains terms that enable the court to allocate liability."); Restatement (Second) of Conts. § 33 cmt. a ("If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract.").

[¶24] Belyea's role in and Campbell's involvement with the business necessarily changed because Belyea was no longer permitted to be at the FedEx terminal, drive a vehicle associated with FedEx, or meet with FedEx representatives and because the contract was renewed with the understanding that Campbell, not Belyea, was the "Authorized Officer."[6] Moreover, the terms

---

[6] A question was posed at oral argument that if nothing changed—after Belyea transferred his stock in BEI to Campbell and she became the "Authorized Officer" for BEI's contract with FedEx—

14

of the alleged contract were not sufficiently definite regarding the respective roles and obligations of Belyea and Campbell. *See Roy v. Danis*, 553 A.2d 663, 664-65 (Me. 1989); *Ault*, 520 A.2d at 704-05; *Cote*, 2003 ME 146, ¶¶ 2-3, 837 A.2d 140; *cf. Tobin*, 2014 ME 51, ¶¶ 1-2, 6-7, 11-13, 89 A.3d 1088 (determining that the parties' agreement was sufficiently specific and vacating the judgment, which was entered as a matter of law for the defendant notwithstanding the jury verdict for the plaintiff on his claim for breach of contract, where the parties specified the plaintiff's obligations, the percentage of net proceeds the plaintiff would receive, and the funds and materials the defendant would provide the plaintiff); *Fitzgerald*, 2009 ME 115, ¶¶ 2-4, 17-18, 983 A.2d 382 (determining that oral contract for the plaintiff to assist in selling a power plant for a commission was sufficiently definite, despite the defendant's contention that there was "no evidence regarding the amount of a 'commission' to be paid," in part because the plaintiff had previously sold power plants for the defendant's company).

[¶25] It is also unclear what Campbell's remedy would be for any breach by Belyea. *See* Restatement (Second) of Conts. § 33 cmts. b, f (stating "the

whether the purported contract between Belyea and Campbell would have been part of a scheme to perpetuate a fraud. However, because neither party raised or briefed this issue, we do not consider its possible implications on the issues before us in this appeal.

fundamental policy that contracts should be made by the parties, not by the courts, and hence that remedies for breach of contract must have a basis in the agreement of the parties"). The parties also did not adequately specify the contract's term or any details regarding a possible reconveyance of BEI to Belyea. *See Ross*, 146 Me. at 27-28, 76 A.2d at 541 (determining that the terms of an alleged contract were "too vague and indefinite" to be enforced in part because "there was no time set during which the employment was to continue"); *cf. Pelletier*, 2012 ME 15, ¶¶ 4, 8, 14-16, 36 A.3d 903 ("Because the parties had agreed on the appraised value of the corporation's properties, which properties would go to each [party], and that the division would result in the [parties] each receiving property or cash of equal total value, it was reasonable for the court to determine and supply the missing price term.").

[¶26] In summary, the terms of the alleged contract between Belyea and Campbell were not sufficiently definite as to (1) the roles of Belyea and Campbell and their obligations in BEI because Campbell, not Belyea, was the "Authorized Officer" under the FedEx contract and Belyea's role was more restricted due to his disqualification; (2) what action or inaction by Belyea would violate the contract; (3) what Campbell's remedy would be for any breach by Belyea; and (4) the contract's duration or any details regarding a

possible reconveyance of BEI to Belyea. The terms of the alleged contract do not enable a court to determine the contract's meaning or fix the parties' legal liabilities. *See Pendleton v. Sard*, 297 A.2d 889, 892 (Me. 1972). The court therefore did not err, and we affirm the judgment as a matter of law for Campbell notwithstanding the jury's verdict for Belyea. *Cf. Me. Energy Recovery Co.*, 1999 ME 31, ¶ 8 & n.3, 724 A.2d 1248 (determining that the court erred in vacating the jury verdict and explaining that "[a] court may not vacate a judgment entered upon a jury verdict in a manner that would constitute a reexamination of the jury's factual conclusions").

## B.     Conversion

[¶27]   Belyea argues that the court erred in concluding that he had no right to demand a return of BEI. Belyea contends that because an enforceable contract existed, pursuant to which he had a legal interest in BEI, Campbell unlawfully converted that interest to herself and denied him his fair share of BEI's profits.

[¶28]   In reviewing a court's "disposition of a motion for a judgment as a matter of law, we consider the evidence and all justifiable inferences to be drawn therefrom in the light most favorable to the party opposing the motion." *Currier v. Toys 'R' Us, Inc.*, 680 A.2d 453, 455 (Me. 1996). "The granting of a

motion for a judgment as a matter of law is improper if *any* reasonable view of the evidence could sustain a verdict for the opposing party pursuant to the substantive law that is an essential element of the claim." *Id.*

[¶29] "The gist of conversion is the invasion of a party's possession or right to possession at the time of the alleged conversion." *Barron v. Shapiro & Morley, LLC*, 2017 ME 51, ¶ 14, 157 A.3d 769 (quotation marks omitted). "The necessary elements to establish a claim for conversion are a showing that (1) the person claiming that his or her property was converted has a property interest in the property; (2) the person had the right to possession at the time of the alleged conversion; and (3) the party with the right to possession made a demand for its return that was denied by the holder." *Id.*

[¶30] Belyea ties his argument regarding the conversion claim to his success regarding his claim for breach of contract. Because, as we determined above, there was not a sufficiently definite contract between the parties, we conclude the court did not err with respect to Belyea's conversion claim. Belyea transferred his stock to Campbell and resigned all corporate offices on August 10, 2016, and he did not show that he had the right to possession of any property interest in BEI in 2018. *See id.* ¶¶ 5-8, 15-16; *Bell v. Red Ball Potato Co.*, 430 A.2d 835, 837-38 (Me. 1981) (affirming determination that the sellers'

cause of action for conversion failed because the sellers were unable to demonstrate either an interest in the title or the right to possession of the disputed goods); *see also Possession*, Black's Law Dictionary (12th ed. 2024) (defining "possession" to mean, in part, "[t]he fact of having or holding property in one's power" or "the exercise of dominion over property").

The entry is:

Judgments affirmed.

---

Jamesa J. Drake, Esq. (orally), and Rory A. McNamara, Esq., Drake Law LLC, Auburn and York, for appellant Randall C. Belyea

Robert F. Ward, Esq. (orally), Houlton, for appellee Heather A. Campbell

Business and Consumer Docket docket number CV-2019-16
FOR CLERK REFERENCE ONLY